This is a suit instituted by the plaintiff wherein he seeks to recover compensation under Act No. 20 of 1914, as amended, at the rate of $10.92 per week for a period of not exceeding 400 weeks beginning May 29, 1939, and the sum of $250 as medical expenses. His demand is made against his employer, American Bitumuls Company, and its insurer, Travelers Insurance Company.
Plaintiff alleges that, while working at a weekly wage of $16.80 per week, in the course of his employment with the Bitumuls Company, which company was engaged in a hazardous business as defined by the Workmen's Compensation Statute, he received a hernia as the result of an accident or accidents during the latter part of April or the first part of May, 1939; that he immediately reported the said accident or accidents to his foreman and other agents of the defendant company; that he sought the services of a doctor and was informed that he was suffering from a hernia, an operation therefor being recommended; that he reported his condition and his doctor's recommendation to his employer; that, due to his condition, he was forced to discontinue his work altogether; that he was operated upon for the said hernia at the Charity Hospital in New Orleans, on June 2, 1939, which operation was unsuccessful; and that, as a result thereof, he is now permanently and totally disabled.
In defense of the suit, the defendants admit the employment of plaintiff at the weekly wage of $12.60 per week at the time of the alleged occurrence of the accidents resulting in the hernia but denied that the plaintiff had met with any accident or accidents resulting in a hernia during the course and scope of his employment; in the alternative, defendants contended that if plaintiff did have such an accident resulting in a hernia, then, and in that event, the operation for the correction of the said hernia was a complete success and that plaintiff had completely recovered within a short time following the operation.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened in the suit, claiming the sum of $218, with 10 per cent additional thereon as attorney's fees, as medical expenses furnished the plaintiff. By admission between all parties litigant, this amount was reduced to the sum of $168 in the event judgment be rendered against the defendants for any compensation in favor of plaintiff.
Upon trial of the case, judgment was rendered: (1) in favor of the plaintiff and against defendants, in solido, (a) awarding plaintiff compensation at the rate of $8.19 per week for a period from May 29, 1939, to October 2, 1939, with legal interest on each week's compensation from its due date until paid; (b) in the sum of $250 for medical expenses, with judicial interest thereon from December 18, 1939, until paid; (2) in favor of the Charity Hospital Board and against defendants, in solido, in the sum of $162.75 as cost of medical services rendered plaintiff, with legal interest from judicial demand until paid, this amount to be paid in preference and priority out of the previous award of $250 therein made to the plaintiff for medical expenses; (3) and against the defendants for all costs. Both plaintiff and defendants have appealed. *Page 418 
That the plaintiff did, in some way, suffer a hernia for which he was operated upon on June 2, 1939, is not at issue before us. The most serious questions presented to us are: (1) Did the plaintiff meet with an accident during the course and scope of his employment from which a hernia resulted? (2) If so, was the operation performed on him on June 2, 1939, for the hernia completely successful, and did plaintiff fully recover therefrom with no residual disability?
The evidence shows that plaintiff had been working for the defendant company some two or three years prior to June 2, 1939; that prior to his employment by defendant company, he was not examined; that his duties required him to lift heavy objects; that he performed these duties satisfactorily and without any complaint; that plaintiff had never been sick before and never had done any work for anyone else which caused any hernia; that the hernia developed and was found during his employment with defendant corporation.
The plaintiff testified that in the latter part of April or the first part of May, while lifting a barrel of asphalt, he slipped or stumbled, and received a pain in his left side; that Mr. Pritchard, his foreman, was present and saw the accident; that he continued to work until his day was done; that, at home, he complained of his side hurting him, and was sick of the stomach; that the following day, he worked; that some three or four days thereafter, while lifting a tub filled with dirt and asphalt, he had a recurrence of the pain; that Mr. Pritchard was called and was informed of his complaint. Mr. Pritchard, an employee of the defendant and foreman of plaintiff, corroborated plaintiff's testimony as to his slipping in the lifting of a barrel of asphalt, but does not remember of plaintiff complaining of being then injured; however, he does admit that some three or four days thereafter he was called by a fellow employee to the plaintiff, and that he found the plaintiff complaining of his side hurting him and that he instructed the plaintiff to report to Mr. Cole, the superintendent of defendant's plant. This is in corroboration of plaintiff's testimony that he suffered a second accident in the lifting of a tub.
The evidence is to the effect that plaintiff reported this accident to Mr. Cole, who instructed the plaintiff to consult a physician of his own choice. Pursuant to this instruction or advice, plaintiff visited Dr. Paulsen, a physician in Baton Rouge; but as soon as Dr. Paulsen perceived that this might be a compensation suit, the doctor did not get a complete history of the case but diagnosed the case as being a hernia; he, the doctor, so informed the plaintiff, and so advised Mr. Cole of his diagnosis. The plaintiff states that the doctor advised him to return to light duty; that he returned to the plant and was again engaged when on May 27, 1939, he was forced to leave on account of the hernia. He claims that, upon his return from the doctor's office, he saw Mr. Cole and informed him of the doctor's diagnosis and his desire to be operated upon for the hernia, but did not receive any help from Mr. Cole, the plant manager of defendant.
As against this, we have the testimony of Dr. Paulsen and Mr. Cole relative to the accident resulting in the hernia.
Dr. Paulsen testified that plaintiff, upon being questioned as to how he received the hernia, stated that he may have acquired the hernia by his falling from a ladder, yet Dr. Paulsen stated that plaintiff did not attach much importance to this fall. Dr. Paulsen also admits that as soon as he found out that this would probably lead to a compensation suit, then he did not go into any further history of the case, and advised Mr. Cole and the plaintiff that plaintiff was suffering with a hernia. We do not see wherein Dr. Paulsen's testimony is in any conflict with that of plaintiff. Mr. Cole states that plaintiff told him that probably he had obtained this hernia in the operation of a soil machine while working for defendant some months or year prior to the alleged accident. Plaintiff reported to Mr. Cole in accordance with instructions of his foreman Pritchard. It is hard to believe that plaintiff would have reported any other accident but what Pritchard had witnessed and about which he had been informed. Cole denied that he was informed by Dr. Paulsen that plaintiff was suffering with a hernia.
The plaintiff was operated for this hernia at the Charity Hospital on June 2, 1939. He was discharged from the hospital on June 14, 1939, and returned home. The preponderance of the medical testimony is to the effect that the operation was successful and that the plaintiff completely recovered from the hernia. His complaint is that since he was operated for a sliding inguinal hernia, his lower bowel or bowels have become obstructed presumably by adhesion *Page 419 
to the peritoneum, causing contraction and causing him to be permanently and totally disabled. He offered the testimony of Dr. Young, a practicing physician, and Dr. Lester J. Williams, a radiologist, while the defendants offered the testimony of Doctors Godfrey, Geismar, Levin, McKowen, and McVea, physicians and Dr. Menville, roentgenologists.
The evidence relative thereto is, as usual, contradictory, in fact diametrically opposite. We are of the opinion that this is purely a medical question where lay testimony can be of no help to us.
In his petition, plaintiff contends that he is now suffering with high blood pressure and extreme nervousness, nephritis, constipation and pains in the lower bowels; that, upon information and belief, he avers that there is an obstruction of the large bowel at its junction with the sigmoid; all as the result of the accidents he sustained and the operation for the hernia resulting therefrom.
In this court, plaintiff has abandoned his claim that the hypertension, nephritis and probably chronic appendicitis which he may be suffering from are due to the accidents and the resulting operation for the hernia, very probably since his own doctor, Dr. Young, disavowed any connection therewith. Plaintiff now only contends that his extreme nervousness, constipation and pains in his lower abdomen are due to some obstruction of the large bowel at its junction with the sigmoid, and has offered the testimony of Dr. Richard W. Young, a practicing physician and Dr. Lester J. Williams, a radiologist.
Dr. Young testified that he was first consulted by plaintiff on September 28, 1939, more than three months after the operation and that he complained that he was suffering from constipation and nervousness; that plaintiff stated that he had to take epsom salts to get his bowels to act and that he had a burning sensation on the left side. That his examination of the plaintiff revealed that plaintiff was suffering from hypertension and nephritis, which seemed to account for his condition at that time; that the hernia had been successfully repaired; that the plaintiff visited him again on December 1, 1939, complaining that his constipation had become worse and that he was unable to get his bowels to act; that, on re-examination of the plaintiff, he was of the opinion plaintiff was suffering from an obstruction of the large bowel at the junction of the sigmoid caused probably by an adhesion following the hernia operation, but that he had no positive way of proving his conclusion without an exploratory operation; that again on the 18th of December, 1939, plaintiff returned to his office complaining of vomiting for the past three days; and upon his examining the plaintiff, he found that plaintiff's abdomen was markedly tender and distended, the tenderness being mostly around the hernia scar and that he referred him to the General Hospital at Baton Rouge for further study and to be X-rayed; that, in the treatment of the plaintiff, he did not prescribe any medicine on his first visit but thereafter gave him two prescriptions, one for his nerves and the other for his bowels; that he had referred the plaintiff to Dr. Lester J. Williams for X-ray pictures and reports, and from the report of Dr. Williams, he was of the opinion that plaintiff was suffering from a hypertension, a mild nephritis and an intestinal obstruction. He is of the opinion that an operation for a sliding hernia may cause an adhesion and an intestinal obstruction. It is to be noted that the doctor is not positive that the operation caused an intestinal obstruction, but states that it may be a result of such operation. He maintains on cross-examination that the only way to determine definitely such fact is by an exploratory operation. By this he destroys his testimony to the effect that it is his opinion that the obstruction, if any, was the direct cause of the operation for the sliding hernia.
Dr. Lester J. Williams, the expert radiologist, testified that he made the first examination of plaintiff on October 20, 1939, and after giving the plaintiff a barium enema, he noted a narrowing of the descending colon; and after evacuation he confirmed this narrowing of the descending colon. He further testified that on December 19, 1939, he made a second barium enema which took five minutes to fill the entire colon, that is the ascendens, the descendens and the transverse; that he took a picture of the colon and sigmoid while filled and another picture after evacuation; that in these pictures, the descending colon appeared narrower and did not appear to him as being normal.
Dr. Williams was called to interpret films taken by Dr. Menville for the defendant. He testified that "D-1", an X-ray film taken of the defendant without barium and presumably lying flat, showed no pathology. He was thereafter presented films "D-3", *Page 420 
"D-4", and "D-5", which seem to be films taken after a barium enema, partial evacuation, and further evacuation. He states that he is unable to see any pathological process with the sole exception that the ascending colon is somewhat displaced to the left and that there appears nothing abnormal as to the descending colon. He states, however, that in accordance with his films taken in October and December, 1939, there is a dilation of the sigmoid but he does not account for the same by obstruction or adhesion.
As against this, we have the testimony of Dr. Levin, a recognized physician and an expert on internal medicine, who had made pictures of the plaintiff's abdomen and who is fully qualified to interpret his own films and those of others. In the reading interpretation of his own films and those taken by Dr. Menville and Dr. Williams, Dr. Levin was of the positive opinion that the X-ray pictures did not disclose any material narrowness of the descending colon and a displacement of the ascending colon, nor that the pictures indicated any obstruction of the lower bowels or any adhesion of the same; he was of the further opinion that plaintiff was suffering probably from psychoneurosis, a functional disorder of the mind and nerves, on which latter disability plaintiff is not relying to recover compensation. He testified at length and disagreed with the findings of both Dr. Williams and Dr. Young.
Dr. Menville, an expert radiologist, testified also at length and was of the opinion that there was no intestinal obstruction, and that his examination of the colon and sigmoid of the plaintiff showed no abnormality. He did find, however, that plaintiff's appendix was long, large, and with a kink near its proximal end with some dilatation of its distal end, suggestive of chronic appendicitis. He seemed to be certain that plaintiff had no bowel obstruction and that he suffers no ill effect from the hernia operation.
Doctors McVea's and McKowen's testimony has very little weight, in that they did not examine the plaintiff but only testified from the report of the Charity Hospital record. They stated that it was their opinion that from the description of the operation, the operation was an ordinary repair of indirect inguinal hernia. Dr. McKowen, after being shown the X-ray films, did state that he saw no evidence of any bowel obstruction or stricture and no abnormality in the descending colon and sigmoid. His diagnosis was that plaintiff was suffering from chronic appendicitis.
Dr. Godfrey testified that he examined the plaintiff on September 12, 1939, which was prior to the examination by Dr. Young, and the taking of X-ray pictures by any one, and that plaintiff complained of pain on the right side, high up; that plaintiff did not complain of any partial obstruction or trouble with his bowel movement or any urinary trouble.
Dr. Geismar testified that he examined plaintiff on January 17, 1940, and that this examination "revealed large inguinal scar the result of a hernia-plasty performed at the Charity Hospital in June, 1939. There was no evidence of a recurrence. The abdomen presented no tenderness, no rigidity, no masses"; that he found no intestinal obstruction, and no evidence of appendicitis; in fact he found nothing wrong with plaintiff.
Suffice it to say, that the trial court came to the conclusion that the preponderance of the evidence shows that the plaintiff suffered an accident while in the course and scope of his employment by defendant resulting in a hernia, and that according to the preponderance of the medical testimony that the plaintiff suffers no ill effects from the operation to correct the hernia; and granted plaintiff compensation from May 29, 1939, the day plaintiff left defendant's employ to October 2, 1939, being a period of four months, the longest period during which, as shown by the medical testimony, plaintiff was disabled by the hernia which was finally corrected. After a careful review of the record, we cannot find any reversible error in his conclusions, but we may add that the plaintiff has failed to show any causal connection between his hernia operation to his present disability, if any exists.
However, we do find wherein the trial judge did commit an error in his judgment; that is, in allowing the plaintiff the maximum of $250 as medical expenses incurred by virtue of the accident. We find only the charge of the Charity Hospital Board to the amount of $168, but since the judgment only allowed the said board the sum of $162.75, and the board has failed to appeal or answer the appeals of plaintiff and defendants, we cannot alter the judgment as to it. *Page 421 
For these reasons, the judgment is amended by reducing the amount allowed for medical expenses from the sum of $250 to the sum of $162.75, and as thus amended, it is affirmed at the costs of the defendants in both courts.